IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 4 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| ADVENTIS, INC., | ) |
| Plaintiff/Counterclaim-Defendant, | ) Case No. 7:02CV00611 |
| v. | ) MEMORANDUM OPINION |
| CONSOLDATED PROPERTY HOLDINGS, INC., *et al.*, | ) |
| Defendants/Counterclaim-Plaintiffs. | ) By: James C. Turk<br>Senior United States District Judge |

The case is before the court on the plaintiff's motion for summary judgment and the defendants' cross-motion for summary judgment. The parties have filed supporting briefs and the court heard oral arguments on April 3, 2006. For the following reasons, the plaintiff's motion for summary judgment and the defendants' cross-motion for summary judgment are **Denied**.

### I.

Adventis, Inc. ("Adventis"), filed this civil action against Consolidated Property Holdings, Inc. ("CPHI") and its subsidiary, Big Lots, Inc. ("Big Lots"). Adventis's amended complaint charges the defendants with federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and common law trademark infringement. The defendants filed a counterclaim charging the plaintiff with federal trademark infringement under the Lanham Act, false designation of origin (commonly referred to as unfair competition), trademark dilution, and common law trademark infringement and unfair competition. The parties stipulated that the likelihood of confusion existed between the plaintiff's United States Patent and Trademark

1

Office ("USPTO") applied-for mark 78069918 ("918 mark"), and the defendants' USPTO applied-for mark 76305489 ("489 mark") and USPTO registered mark 2828987[1] ("987 mark"). The defendants also argued that the plaintiff's mark is confusing with its USPTO registered word mark 2087643 ("643 mark").

The parties filed cross-motions for summary judgment. The court granted partial summary judgment for each party, holding that since there is no likelihood of confusion between the parties' marks, neither party had infringed on each other's mark. The parties appealed the court's decision to the Fourth Circuit Court of Appeals. The Fourth Circuit vacated the court's order holding that the district court could not find that there is no likelihood of confusion because it is bound by the parties' admission of the likelihood of confusion. The case was remanded to the court and the trademark infringement claims have been winnowed down to deciding whether the marks at issue were protectable and which party has senior priority of use as to the competing marks. The cross-motions for summary judgment have been filed with each party stating that it has the higher priority of use.

## II.

Upon motion for summary judgment, the Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). An award of summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Metric/Kvaerner Fayetteville v. Federal Ins. Co., 403

---

[1] The mark was registered subsequent to the filing of this action.

F.3d 188, 197 (4th Cir. 2005) (citation omitted). A genuine issue of material fact is one that might affect the outcome of the suit under the governing law. Id. Indeed, a dispute represents a genuine issue of material fact if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

### A.

In order to establish trademark infringement under the Lanham Act, the complainant must show that: (1) It has a valid, protectable trademark; and (2) The defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.[2] See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 930 (4th Cir. 1995). "The parties' reciprocal admissions that their marks were confusingly similar effectively reduced their dispute to a litigation addressing a) whether either party had a valid, protectible (sic) trademark and b) which had priority of use." See Adventis, Inc. v. Consolidated Property Holdings, Inc., 124 Fed. Appx. 169, 172 (4th Cir. 2005) (unpublished).

The complainant "must first and most fundamentally prove that it has a valid and protectable mark. See Microstrategy, Inc. v. Motorola, Inc., 245 F.3d 335, 340 (4th Cir. 2001). A mark need not be registered to garner federal or common law trademark protection. In this circuit, an unregistered mark must satisfy two requirements if its owner is to have a protectable interest in the mark: (1) The mark must be used in commerce, see Larsen v. Terk Technologies Corp., 151 F.3d 140, 146 (4th Cir. 1998); and (2) It must be distinctive, see Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996). The parties do not dispute that the 918,

---

[2]Common law trademark infringement in Virginia parallels the federal law and, thus, the federal and common law infringement claims will be analyzed together.

3

489, and 987 marks were used in commerce,[3] and the court agrees that the marks at issue were used in commerce.

Next, trademark protection requires that the complainant prove its mark is distinctive. The protection accorded a trademark is directly related to its distinctiveness. Sara Lee Corp., 81 F.3d at 464. Following the classic formulation by Judge Friendly in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976), a mark can be categorized along the distinctiveness spectrum as generic, descriptive, fanciful, arbitrary, or suggestive. Sara Lee Corp., 81 F.3d at 464. Fanciful, arbitrary, and suggestive marks are inherently distinctive. See id. Descriptive marks can be afforded protection if they acquire secondary meaning. See id. Lastly, generic terms can never be trademarked. See id.

Given the difficulty in determining which category to place a mark, courts give due regard to the USPTO classification of a mark in accepting or rejecting a mark for registration.[4] See Lonestar Steakhouse & Saloon, Inc., 43 F.3d at 934. Neither party has submitted evidence as to whether such a determination was made by the USPTO, and if the USPTO did classify the mark, in which category the 918 and 489 marks were placed. With the limited amount of evidence presented as to the distinctiveness or strength of the marks at issue, neither party has met its initial burden to prove that it is entitled to judgment as a matter of law because neither party has met its burden to show that there is no genuine issue that their marks are valid and protectable or that the opposing party's marks are not valid or protectable. See Celotex Corp. v.

---

[3]The parties only dispute when the marks were first used in commerce.

[4]The defendants' 987 mark was registered subsequent to the filing of this civil action and could be evidence supporting the distinctiveness of the mark.

4

Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (stating that the moving party has the initial burden to show that no genuine issue exists and that it is entitled to summary judgment as a matter of law).

In analyzing the distinctiveness of the words "Big Lot" or "Big Lots" in each party's mark, the words could arguably be categorized as generic, descriptive, or suggestive.[5] "Big Lot" and "Big Lots" could be interpreted as a plain and simple term for the seller's location such as "marketplace" or "plaza". The terms could also be descriptive and protectable if they acquired a secondary meaning. Furthermore, the terms could be suggestive because they may create a nexus allowing the consumer to conjure up the seller's business in his mind with a little imagination. In addition, the distinctiveness inquiry has added depth in the instant case because the words coupled with the design elements must be looked at as a whole.

Since neither party has adequately briefed the court on the issue, it is left with little probative evidence to consider whether the 918, 489, and 987 marks in their entirety are distinctive enough to be afforded protection.[6] The distinctiveness and strength of the marks at issue will be a question left for the factfinder. Cf. Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 74 (2d Cir. 1988) ("The [Lanham] Act is aimed to protect purchasers in the marketplace, and it is their perception that determines whether a mark is descriptive or suggestive."). If the 918, 489, and 987 marks are protectable, the issue of who has infringed upon whom will be an issue of

---

[5] The incontestability of the defendants' 643 word mark may suggest that the 489 and 987 marks are protectable since the words "Big Lots" is a central piece of the marks.

[6] At most, the parties stated that they own their marks, but have not argued the issue of distinctiveness.

5

seniority since the likelihood of confusion has been stipulated to by the parties.[7]

**B.**

The issue of who is the senior user of two competing unregistered marks is determined by who first used its mark in commerce. "Use" means the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." Emergency One, Inc. v. American FireEagle, Ltd., 228 F.3d 531, 536 (4th Cir. 2000). Neither promotional use of the marks on goods in a different course of trade nor mere token use constitute "use" under the Lanham Act. See id. Thus, whomever used their mark first in time has priority. Neither side disputes that the plaintiff's applied-for 918 mark was first used in commerce as of May 2001. Furthermore, neither side disputes that the defendants' 489 and 987 marks were first used in April 2001.

The plaintiff asserts, however, that it is the senior user because it should be deemed as using the 918 mark as early as February 2001 when it first used the design of the 918 mark with the addition of the ".com" internet designation.[8] The defendants also assert that they are the senior users because they started using the 489 and 987 marks as far back as 1985 when they first

---

[7]The court is fully aware of the binding precedent of this circuit that states that likelihood of confusion is an issue of fact. It must note, however, the inefficiency of allowing the parties to play the sorcerer's apprentice and conjure up a colorable claim solely based on the parties' stipulation to an essential element of the claim premised on their bald and conclusory averments. Cf. Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 116 (2d Cir. 1984) ("Questions regarding the likelihood of confusion are normally factual in nature. (citation omitted). Nonetheless, 'courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source . . . .'" (citation omitted)).

[8]Plaintiff has withdrawn any argument that the 918 mark should relate back to its mark first used in December 2001.

6

used the words "Big Lots" to identify their business. Both parties' arguments apply the doctrine of tacking in order to assert priority of use.

The tacking doctrine is essentially a constructive use theory that recognizes the ability of a trademark owner to claim priority in a mark based on the first use date of a similar, but technically distinct, mark. See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999). Essentially, the trademark holder "seeks to 'tack' his first use date in the earlier mark onto the subsequent mark." Id. at 1048. The Fourth Circuit has yet to pass upon whether the tacking doctrine can be utilized. The circuit courts of appeals, however, that have passed upon the doctrine have recognized it. See Van-Dyne Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991), Data Concepts, Inc. v. Digital Consulting, Inc., 150 F.3d 620, 623 (6th Cir. 1998); Brookfield Comm'ns, Inc., 174 F.3d at 1047-48.

The court agrees that the tacking doctrine should be allowed so that a trademark holder's rights are not thwarted by every minuscule change or variation in a mark that continues to convey the same impression. See Brookfield Commc'ns, Inc., 174 F.3d at 1048 ("Without tacking, a trademark owner's priority in his mark would be reduced each time he made the slightest alteration to the mark, which would discourage him from altering the mark in response to changing consumer preferences, evolving aesthetic developments, or new advertising and marketing styles."). Tacking, however, should be allowed in the exceptionally narrow instance where "the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark . . . so that the subsequent mark serves the same identificatory function as the prior mark." See Brookfield Commc'ns, Inc., 174 F.3d at 1047-48. Although the courts that have addressed the tacking

7

doctrine have universally allowed it, the issue of whether tacking is one of law or fact has garnered differing opinions.

The Federal, Sixth, and Ninth Circuits have held that the issue of tacking is a legal conclusion premised upon whether two designs are legal equivalents. See Van-Dyne Crotty, Inc., 926 F.2d at 1159, Data Concepts, Inc., 150 F.3d at 623; Brookfield Comm'ns, Inc., 174 F.3d at 1048. A district court in the Seventh Circuit, however, has held that the issue of tacking is one of fact. See Navistar Int'l Transp. Corp. v. Freightliner Corp., 52 U.S.P.Q.2d 1074, 1079 (N.D. Ill. 1998). Similar to the circuit split on the issue of likelihood of confusion, certain circuits have held that that issue is one of fact, while the remaining circuits have held it is a mixed issue of law and fact. Compare Adventis, Inc., 124 Fed. Appx. at 173 (citing Anheuser-Busch, Inc. v. L. & L. Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992), for the holding that likelihood of confusion is an issue of fact in the Fourth Circuit) with Little Caesar Enters., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 570 (6th Cir. 1987) (holding that likelihood of confusion is a mixed question of law and fact). As an issue of first impression, the court holds that whether two designs should tack is an issue of fact.

As held in the seminal case defining tacking by the Federal Circuit, whether two designs are legal equivalents is determined by whether they "create 'the same, continuing commercial impression,' (citation omitted), and the later mark should not materially differ from or alter the character of the mark attempted to be 'tacked.'"[9] See Van Dyne-Crotty, Inc., 926 F.2d at 1159. Although the courts that have addressed the issue of tacking have differed upon whether the

---

[9]Although the Navistar court states that the legal equivalence doctrine and tacking doctrines are two distinct analyses, every court that has passed upon the tacking doctrine has narrowed the issue to whether two designs impress the same commercial impression.

8

analysis is one of law or fact, every court has narrowed the analysis to include the inquiry of whether the consumer would consider the prior and subsequent designs as the same. See id. ("[T]he consumer should consider both as the same mark." (citation omitted)); Data Concepts, Inc., 150 F.3d at 623 (stating that legal equivalence for tacking purposes requires that "the marks sought to be tacked 'must create the same continuing commercial impression.'"); Brookfield Comm'ns, Inc., 174 F.3d at 1048 ("We agree that tacking should be allowed if two marks are so similar that consumers generally would regard them as essentially the same."); Navistar Int'l Transp. Corp., 52 U.S.P.Q.2d at 1080 ("The test for tacking is whether two marks make the same commercial impression . . . ."). The court finds it convincing that whether two designs tack is an issue of fact because the analysis primarily turns upon the perspective of the consumer. Cf. Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund v. Louis Zahn Drug Co., 890 F.2d 1405, 1410 (7th Cir. 1989) ("[T]he practical truth [is] that the decision to label an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact' is sometimes as much a matter of allocation as it is of analysis." (citation omitted)); Flying Tiger Line v. Teamsters Pension Trust, 830 F.2d 1241, 1255 (3d Cir. 1987) ("Distinctions between questions of fact and law are, after all, often rather tenuous.")

Whether two marks create the same continuing impression or are materially different is an issue viewed from the perspective of the consumer because it is the consumer's conclusion that is material. See Navistar Int'l Transp. Corp., 52 U.S.P.Q.2d at 1079 ("As for whose impression matters, it is the impression of the consumers for the product at issue that matters."). The opinion of the consumer is crucial because a central purpose of trademark law is to create a marketplace in which the consumer is not deceived or confused by competing sellers. Cf.

9

Brookfield Comm'ns, Inc., 174 F.3d at 1048 ("Giving the trademark owner the same rights in the new mark as he has in the old helps to protect source-identifying trademarks from appropriation by competitors and thus furthers the trademark law's objective of reducing the costs that customers incur in shopping and making purchasing decisions."). The opinion of a court sitting in its ivory tower sheds no light on an issue in which the everyday consumer is the more adept expert.

Analogously, the Fourth and Seventh Circuits have held that the issue of likelihood of confusion is one of fact. See, e.g., Anheuser-Busch, Inc., 962 F.2d at 318. The issue of "same, continuing commercial impression" stems from the same "bloodlines" as the issue of likelihood of confusion because whether two marks impart the same commercial impression is a heightened scrutiny of the likelihood of confusion analysis. See Van Dyne-Crotty, Inc., 926 F.2d at 1159 ("[T]he standard of legal equivalence in reviewing efforts to 'tack' . . . is higher than that used in evaluating two competing marks . . . even if two marks are confusingly similar, they still may not be legal equivalents."). Both analyses are inherently factual because they depend on the unique facts and circumstances of each case, see Anheuser-Busch, Inc., 962 F.2d at 318, and the factfinder must ultimately weigh the merits of the issue when facts are disputed.[10]

Applying the tacking doctrine to the instant case, the plaintiff argues that the 918 mark tacks to its prior unregistered design because the only difference between the 918 mark and the prior mark is the deletion of a ".com" designation. The court agrees with the plaintiff that the

---

[10]The party seeking to tack bears the burden of proof. Probative evidence to prove that two marks impart the same, continuing commercial impression include: (1) Side-by-side comparisons of the similarities or differences of the marks; (2) Anecdotal or more broad-based evidence of consumer perception; and (3) Intent or purpose of the mark-holder in style or design modifications of the marks, as it relates to influence on consumer perception.

10

deletion of an internet address designation would generally not alter the commercial impression of a mark.[11] See Brookfield Comm'ns, Inc., 174 F.3d at 1055. Whether the deletion of a slogan or design elements from a mark continue to impress the same commercial impression would be a more difficult question. The defendants have argued and submitted evidence that the plaintiff's mark prior to the applied-for 918 mark included not only a ".com" designation, but also a slogan and other design elements. See Defendants' Brief in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 5. The plaintiff has solely argued that the difference between the 918 mark and its predecessor was solely the deletion of a ".com" designation. The issue of which mark is the predecessor of the 918 mark, and ultimately whether the predecessor design creates the same commercial impression as the 918 mark, are disputed facts that cannot be settled on summary judgment.

The defendants' tacking argument hinges on whether the 489 and 987 marks are legal equivalents with the 643 mark. The defendants state that their 643 word mark registration allows them to change their mark at will; this is incorrect. The defendants are correct that a word mark registration allows them to change the font style of the registered words without losing trademark protection. See 37 C.F.R. § 2.52(a)(1) (stating that a typed form registration makes no claim to "any particular font, style, size, or color . . . ."). A word mark registration, however, does not give the holder unbridled discretion to add an exclamation point. The rights in a word mark "reside in the term itself," see In re Melville Corp., 18 U.S.P.Q.2d 1386, 1386 (T.T.A.B. 1991), no more, no less. If the defendants had registered the word "Big Lots" with an exclamation

---

[11]The issue maybe a closer one when the mark-holder is an internet-based business attempting to expand into more traditional modes of retail or a traditional retailer converting exclusively to internet-based sales, neither of which is present in this case.

11

point, the exclamation point would have been protected under the registration because a word mark registration allows variations only of the characters registered. See Fossil, Inc. v. The Fossil Group, 49 U.S.P.Q.2d 1451, 1451 (T.T.A.B. 1998). A word mark registration, however, does not invariably permit the holder to unabashedly add letters, words, symbols, or graphics to a word mark and receive protection for these additions. Whether an addition to a word mark receives protection under the tacking doctrine is analyzed under the strict standard of whether the word mark and the work mark plus the exclamation point convey the same continuing commercial impression.

The court would agree with the defendants that the addition of an exclamation point when used as a punctuation mark would generally not alter the commercial impression of a mark whose major feature is the words themselves. If, however, the exclamation point is more than a mere punctuation mark and is intended to be a new design feature, then the addition of the exclamation point could impart a differing commercial impression. The defendants have cited a number of non-citable persuasive authority that have held that an exclamation point does not change a mark in various situations. See, e.g., In re Hanta Yo Co., 2000 TTAB LEXIS 14 (T.T.A.B. 2000) (unpublished); In re H.E. Butt Grocery Co., 2002 TTAB LEXIS 72 (T.T.A.B. 2002) (unpublished). None of these cases, however, have analyzed the addition of an exclamation point under the tacking analysis nor in the situation when an exclamation point is used for a purpose other than as a punctuation mark.

Although the defendants have argued that the exclamations points in the 489 and 987 marks are solely for punctuation, the plaintiff has proffered evidence that plausibly disputes this when looked at in a light most favorable to the plaintiff. For instance, the exclamation point used

12

in the 987 mark is placed between the words "Big" and "Lots". The court knows of no instance when it is grammatically correct to place an exclamation point in the middle of a sentence or between two words that denote a single proper noun. Furthermore, the plaintiff has proffered evidence that suggests that the defendants use the exclamation point as a graphic independent of the word mark. The exclamation point is independently featured on advertising and in-store signs. See Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment, Exhibit 15. If the exclamation point acts as a design feature, this would suggest that the addition of the exclamation point may impart a differing commercial impression to the word mark itself. Thus, the issue of which party is the senior user between the 918, 489, and 987 marks cannot be settled at summary judgment because there are disputed facts as to whether any of the marks can tack their first use date to a prior unregistered mark. Therefore, the issue of which party has infringed on the other's mark cannot be settled on summary judgment.

### C.

The defendants also assert in their counterclaim that the plaintiff's 918 mark infringes on their 643 mark.[12] The parties have not stipulated to any elements of a claim for trademark infringement, therefore, the defendants must prove that their 643 mark is a valid, protectable trademark and that there is a likelihood of confusion between the 643 mark and the plaintiff's 918 mark. See Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 930 (elements of trademark infringement).

---

[12]If the defendants ultimately win on this claim, the conflict between the 918, 489, and 987 marks is moot because the plaintiff's 918 is invalid because it infringed on a prior mark.

13

First, the 643 mark is likely to be a valid and protectable trademark because it is an incontestable mark. The 643 mark was registered by the defendants in 1997 and became incontestable as of 2002. "A trademark's incontestability provides a strong presumption in favor of the mark's protectibility (sic) and validity." See Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 933. The plaintiff has not rebutted the incontestability of the 643 mark and it is therefore, not in dispute.

Second, the defendants must prove that there is a likelihood of confusion between the 918 and 643 mark. The defendants have submitted evidence to support Pizzeria Uno factors for likelihood of confusion. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984) (stating the factors for determining likelihood of confusion). The plaintiff, however, has argued that there is no likelihood of confusion between the two marks because of the dissimilarities between the marks. The issue is one of disputed fact which the factfinder can reasonably find for the non-moving party. Therefore, summary judgment cannot be granted on this cause of action.

### D.

As for the defendants' remaining claims, the federal false designation of origin claim and common law unfair competition claim parallel the analysis of federal and common law infringement claims. See Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 930 n.10 ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of goods or services involved."). These claims, therefore, rise or fall with the infringement claims and will not be analyzed separately.

As for the defendants' trademark dilution claim, it must show that there is no genuine

14

issue that it has a famous mark and the alleged infringer is causing a dilution of that mark. Defendants' have not offered any proof that their mark is famous. Neither has it made a showing that there was dilution. See Superperformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 222 (4th Cir. 2003). The Supreme Court has held that the dilution statute "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." See CareFirst of Maryland, Inc. v. First Care P.C., 434 F.3d 263, 274 (4th Cir. 2006) (citing Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003)). Dilution means the "the lessening of capacity of a famous mark to identify and distinguish goods or services." Id. Where the junior and senior marks are identical, there can be circumstantial evidence of actual dilution. Id. "[A] mere similarity in the marks - even a close similarity - will not suffice to establish *per se* evidence of actual dilution." Id. "In addition, 'the issue of whether the marks are identical will be context - and/or media - specific and factually intensive in nature.'" Id. The defendants' have not met their initial burden on this claim and therefore, summary judgment cannot be granted.

### III.

Genuine issues of material fact exist as to the trademark infringement claims. The disputed issues to be tried include, *inter alia*:

(1) Is the 918 mark a valid and protectable mark?

    (a) Which category of distinctiveness should the plaintiff's 918 mark be placed?

(2) Is the 489 mark a valid and protectable mark?

    (a) Which category of distinctiveness should the defendants' 489 mark be placed?

15

(3) Is the 987 mark a valid and protectable mark?

    (a) Which category of distinctiveness should the defendants' 987 mark be placed?

(4) Which party has senior priority to use their mark(s) between the 918, 489, and 987 marks?

    (a) What designs, slogans, or characters constitute the plaintiff's prior unregistered mark to its 918 mark?

    (b) Does plaintiff's 918 mark impart the same and continuing commercial impression as its prior unregistered mark?

    (c) Do defendants' 489 and/or 987 marks impart the same and continuing commercial impression as its 643 mark?

(5) Does plaintiff's 918 mark infringe upon defendants' 643 mark?

ENTER: This 24th day of April, 2006.

                                                James C. Turk
                                                Senior United States District Judge

16

Case 7:02-cv-00611-JCT-BWC   Document 105   Filed 04/24/06   Page 16 of 16   Pageid#: 683